is a case called Torres Hurtado, No. 1873141. That case has been submitted on the briefs. The next case after that is a case called Valdivia Angolano v. Garland. That case is also submitted on the briefs. It's No. 1970186. The next case on our docket is to be argued today. It's the case of Morrow Equipment Company, LLC v. Stonebridge, Inc. And I think for the appellant, we have Mr. Robert Cope. And for the defendant appellee, we have Pilar French, Ms. French. So again, we thank both of you for showing up to assist us and doing it in these difficult times with remote hearing. But eventually, you'll have all the glory of arguing in our rooms again. We'll hope that soon that we can proceed with the arguments from Mr. Cope. Good morning, Your Honors, and may it please the Court. Robert Koch on behalf of Morrow Equipment Company. This is a breach of contract case. In the fall of 2018, Stonebridge, Inc., a construction company, contacted Morrow to inquire about renting a tower crane. Morrow sent Stonebridge an unsigned price quote with unsigned signature blocks. Stonebridge submitted a signed order request. Morrow accepted the order by countersigning the lease, and both parties began performing under that duly signed lease agreement. Three months later, Stonebridge canceled the lease but refused to pay damages for the cancellation. Morrow then sued for breach of contract. The district court here dismissed Morrow's complaint, ruling that the parties actually never formed a contract despite the duly signed lease agreement and the parties' performance under it. This court should reverse. The appeal centers around a deposit clause in the lease agreement, which is at ER 40. That clause requires that Stonebridge pay a deposit on acceptance of its order by Morrow, a deposit that Stonebridge never paid. The district court here erroneously construed that clause as referring to an acceptance of the lease by Stonebridge, thereby creating a precondition to contract formation that never occurred. The district court's contract interpretation analysis was erroneous in three separate ways. First, the district court contravened the plain text and context of the signatures on the face of the lease agreement, which is at ER 40. It's clear that Morrow sent the price quote to Stonebridge on November 17, 2018. Stonebridge submitted the signed order request to Morrow on November 21, and Morrow then accepted that order on November 26. That sequence of events, which are implicit in the dates of the signatures on the face of the explicit in the lease agreement on page ER 41 of the contract, the repair agreement portion of the lease, which explicitly stated that it was not binding unless signed by the lessor, which in this case was Morrow. In other words... Counsel, isn't that a separate contract, separate from the leasing contract? And if that was supposed to be the term, why wasn't it in the main leasing agreement as well? Well, Your Honor, actually it is part of the main lease agreement for two reasons. First of all, the plain text of the repair agreement said that it was quote attached and made part of the lease. So the plain text of the contract said that they were to be construed together. And also... It didn't say they were to be construed together. It said it's a part of. It doesn't say it incorporates the language. Neither of them has the incorporation language that we normally see if they're supposed to be construed as one. Well, so I guess I disagree, Your Honor, in terms of when it says that it was made part of the lease. I interpret that as construing them together. And Oregon law also, the Hayes versus Hugg decision that we cited in our opening brief, under Oregon law, when courts are to construe as one contract separate agreements that are entered into by the same parties around the same time. So even if Your Honor disagrees that the repair agreement language of being made part of the lease, if Your Honor disagrees that that requires incorporation, Oregon case law says that who contracts as one when they are entered into around the same time by the same parties. And the repair agreement... Is Hayes versus Hugg you're referring to? Yes, Your Honor. And the case site for that is 756P2D... Oh, I'm sorry. That is the wrong case site. I don't have that case site on me. It's 412P2N373. Okay, great. Yes, it's the Hayes versus Hugg decision, which outlines the contract interpretation methodology for Oregon contracts. And as apart from the text and context of the lease agreement itself, the second reason that the district court, the analysis was erroneous by the district court is because it contravenes standard industry practice. Under Oregon's uniform commercial code, industry course of dealing can explain the terms... Can be used to explain the terms in a particular contract or lease agreement. As Morrow alleged in the complaint here, which the court must construe in the light most favorable to Morrow, it was standard industry... It is standard industry practice in the leasing of rental cranes for a lessor to provide a potential customer with an unsigned price quote. The potential customer can then submit a signed order request, and then it's up to the lessor to decide whether to accept that order by countersigning the lease agreement. And that is precisely what happened here. Well, counsel, to say something is standard industry practice and you just refer to the transactions between the parties at issue doesn't make that a plausible that doesn't make that a plausible claim, does it? I disagree, your honor. If you look at ER 35 paragraph 2 in the complaint, Morrow did more than just allege... Well, that Morrow did more than just refer to prior contracts between the parties. The complaint alleged, quote, the process outlined is typical for the plaintiff's business. Now, the term... That's pretty conclusory. And conclusory allegations don't have to be accepted as true. But, your honor, I don't agree beyond... So I disagree that the complaint is conclusory. I didn't say the complaint is conclusory. I said that's a conclusory statement. Oh, correct. Yes, your honor. But then the complaint in both paragraph 2 and paragraph 9 of the complaint, it lays out what exactly those standard industry steps are, which is exactly what the parties here followed. So I agree that that statement standing alone might not be sufficient to survive a motion to dismiss, but the complaint then laid out what that standard industry practice is, which informs the fact that the term acceptance in the deposit clause of the agreement refers to an acceptance of an order by the lessor, which in this case was Morrow, and which Morrow did accept the requested lease order from Stonebridge by then countersigning the lease agreement. Mr. Koch, let me interject a question on that point. Am I correct that under Oregon contract law, a contract can invite acceptance in any reasonable manner? Yes, your honor. And in fact, the third reason that I was going to say the district court erred here is because under Oregon contract law and under Oregon's uniform commercial code in particular, the conduct of the parties can evidence the formation of a lease as long as the parties act as if they have formed a lease agreement. And that is precisely what happened here. Morrow, after countersigning the lease agreement, Morrow sent a copy to Stonebridge for their reserve to the crane and its lease inventory for the full duration of the lease term. And then Morrow invoiced Stonebridge for the deposit that was required under the agreement. For its part, Stonebridge created an internal purchase order for processing the invoices for the crane, and then submitted back to Morrow a filled out customer information sheet that was required to organize the difficult logistics for leasing the tower crane for the duration of the lease term. And the Trienko case that we cited in our opening brief was a decision from the Oregon Court of Appeals in which that court held that under Oregon law, a contract was formed at the very latest when a potential buyer submitted an order request to the seller. And the seller then invoiced the buyer for the down payment that was required. That demonstrated agreement between the parties. And not only did that happen here, but we have a duly signed lease agreement between the parties establishing that the lease agreement had been reached and was in place. Counsel, to me the pivotal sentence in the equipment lease agreement, it says a deposit retained until project completion equal to two months rent shall be paid upon acceptance of order. So the question is acceptance of order by whom? That's correct, Your Honor. And from our position, it's incredibly clear that... It's not clear, Counsel. Well, okay. It would have been clear if the language had said acceptance of order by lessor or acceptance of order by lessee. So just saying acceptance of order does not clarify what it means. That's true, Your Honor. But I would... For all of the reasons that I've identified where the text and context of the agreement, the standard industry practice, and the conduct of the parties all indicate that the subject of that clause, acceptance of order, is by Moro. It's by the agreement where Moro was the party that countersigned the lease agreement. In our view, it is clear from the repair agreement, which has a clause that says not binding unless accepted by lessor, which was Moro. And it's also clear under the allegations of the complaint, which the court must accept as true at the motion to dismiss phase, it is standard industry practice in the leasing rental industry that a potential customer submits a purchase order request or a lease order request, and then it's up to the rental company to decide whether to accept that order. Counsel, may I ask you if we disagree with you that this language is clear, and we are of the view that it's ambiguous, would it be construed against Moro as the drafter of the agreement? I don't believe so, Your Honor. Generally, under Oregon law, if there is ambiguity, it should be, it's up to a fact finder to resolve that ambiguity, which is yet another reason why it was inappropriate for the district court to dismiss the complaint at the motion to dismiss phase. And I see the time, Your Honors, I'd like to reserve the remainder of my time for rebuttal. Okay, that's fine. We'll hear from Ms. French, please. Good morning, Your Honors. May it please the court, my name is Pilar French. I represent the appellee Stonebridge, Inc. The court should affirm the decision of the district court for three reasons. First, appellants did not preserve the argument they present now on appeal. Second, appellants have abandoned the arguments that they made in the court below, so they are not subject to review. And third, even if this court considers the appellant's newly minted argument, it is legally incorrect. Moro made the offer as a matter of law, but even if the Stonebridge actually made the offer, which Moro accepted, there are not sufficient facts in this complaint for anyone to construe that there was mutual assent. And therefore, the district court is still correct, there is no formation of contract. He signed this lease agreement, isn't that evidence of mutual assent? Well, the problem is, Your Honor, is the framing of the pleadings. The pleadings, as the court knows, puts the defendant on notice of what the claims are. And in this case, the way that the complaint was pleaded, the first amended complaint and the original complaint, in paragraph 9, the plaintiff alleged, quote, defendant clearly indicated its acceptance of the contract in at least the following ways. And then it discusses the signature by Stonebridge, it talks about the preparation of the customer information sheet, our assignment of purchase order by Stonebridge, and then a letter after the party's going to dispute by the attorney. So the framing of this complaint, from its inception, was that Moro made an offer which Stonebridge accepted. You can't... So counsel, can I just... So the question I ask regarding that sentence in the plea paid upon acceptance of order, it's your position that according to the allegations in the complaint, Moro identified Stonebridge as accepting the order and not as that being an offer. Is that your position? That's correct. That is what Moro argued in the court below. And to respond to Judge Zips' question, which I'm sorry, I've taken some time to get to, Your Honor. There's nothing in the first amended complaint or in the documents attached to the first amended complaint that shows that Moro said that it signed document back to Stonebridge. So they may have signed it and just tucked it in their file. We don't know that from what's in the complaint. And this is why there's a preservation problem here. You know, first, as you know, you want the benefit of a full record on appeal. You want the benefit of the district court's analysis. You don't get that here because there was never an argument that Stonebridge made the offer. It was flipped the other way. It's also kind of a judicial estoppel situation, which would lead this court not to consider this argument. Because your arguments about waiver for the moment and focusing on whether or not a contract was formed, if we focus just on that issue and if Oregon law provides that unless otherwise unambiguously indicated by the language or circumstances that an offer must be, an offer to make a lease contract must be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances, we're talking here, and Judge Rollinson asked, if this is not, you know, clear-cut, if we find that it's ambiguous or even if we don't believe it's ambiguous, aren't there multiple ways that there was acceptance in this case? Does it really matter who made the offer when there's evidence of acceptance? No, no, Your Honor. The language in the contract, you have to consider the language in the context of the contract as a whole. First of all, this is a form contract that was prepared by Morrow. It contains heavily weighted favorable terms to Morrow. But the one thing that it does say... Let me just stop you a moment because I just want to focus again on that unambiguous acceptance. So if it's Stonebridge's position that the only way that this contract could be accepted was by their payment of the deposit, under Oregon law, didn't that contract need to clearly say that? In other words, or if that weren't the case, then we would have to set aside the whole rest of this UCC code that we should look for any means of acceptance. I just don't see where this contract is so clear that it says that the only way that this lease can be accepted is by made upon acceptance. So in other words, if there had been acceptance, if there's a lease that's been an offer and a lease for the lease and there's been acceptance, then the deposit should be paid. Isn't that a colorable reading of that same language? No, Your Honor. I don't agree with that. If there was a binding contract and Stonebridge intended to accept, it had to make the deposit. If you look at all of these... Let me stop you. I agree with you that if they accepted, they had to make the deposit. But the question is, is the only way that Stonebridge could accept is by making that deposit? And I think that's what the argument here is, is that the only way that acceptance could occur is if that deposit was made. I think that's correct, Your Honor. And if you look at the Trianco case, which is cited by the plaintiff, or excuse me, the appellant in this case, that's exactly what happened there. There was an invoice sent demanding payments of the deposit and the court relied on that, said that shows acceptance. Here you just don't have enough to establish acceptance with the use of a form contract and the parties taking steps to try to make a reservation. Well, we have Stonebridge's signature. You have Stonebridge's signature? We didn't have that in Trianco. I don't know. I don't know what the... That was not a topic in Trianco as far as I read the facts. But with this particular set of documents, Your Honor, you may ask why did Stonebridge return these documents so quickly? Well, the reason why is if you look at the project information sheet, let me get you the... I believe it's at ER44. This was sent on the same day as the contract. And it says in bold, conspicuous language up at the top, it is imperative that this information sheet be completed, signed, and faxed immediately for equipment to be booked for this project. Failure to return the completed and signed form may result in potential delays in delivery of equipment. So Morrow directed that this information be immediately returned. Stonebridge filled everything out, signed it, returned it, but no deposit was made. And you can also infer from this record, it's admitted by the appellant that their practice was to send an invoice. That's how they would show acceptance. They refer to an unrelated contract and an unrelated invoice in this record. And they talk about this in their briefing. But the fact of the matter is they never sent an invoice in this case. Doesn't the complaint allege that they did? No, it does not, Your Honor. It does not. But there was not an invoice sent. The invoice that is referenced concerns an unrelated contract. Counsel? Yes. What should we do with the repair agreement that accompanied the lease agreement? What is your question about the repair agreement? The language in the repair agreement says that it's not binding unless signed by a lessor officer. How do we include that in our analysis of whether or not there was an acceptance? Well, again, Your Honor, if you decide to consider this new argument that we made the offer that Morrow accepted, which again, we bet you should not. But if you decide to do that, you still don't have enough to establish mutual assent. There's no allegation anywhere in any part of the record that says that Stonebridge knew that Morrow signed these documents. If you look at the other contract that they attached to their first amended complaint, you will see it's at ER 48. Up in the upper corner, there's some handwriting that says final and it's underlined. There's nothing like that with regard to the documents at issue with this contract that shows that the parties had a meeting of the minds, that there was discussion, that there was clear, that there was a communication back to Stonebridge saying, yep, we've got a deal. Send us the money. There's nothing like that. So if we do want to flip the arguments and consider this new argument, which you should not do, the complaint is still deficient as a matter of law. There's no contract formation. And by the way, appellant did not ask for an opportunity to re-plead, which is why the court dismissed this case with prejudice. So this is a whole new argument that was not, we did not have the opportunity to address in the court below and Judge McShane did not have the opportunity to address. And for those reasons, and the principle discussed by Justice Ginsburg in two cases that we cited, it's party presentation principle. They're responsible for framing the issues, not us. In the motion to dismiss, as you originally presented it to Judge McShane, it also did not include these arguments, correct? The arguments had to do with the liquidated damages clause being unenforceable and the written contract was too indefinite? We argued that there was no acceptance, Your Honor. Initially, in the reply brief or in the motion to dismiss? There were two motions to dismiss. There was an original motion to dismiss. We did address this. We did make this argument, albeit briefly, in the original motion to dismiss and it flourished in the reply. The judge said, look, I want everybody, I want the plaintiff to re-plead, re-plead. If you bring another motion to dismiss, we'll have the benefit of a full record. And that happened. There was no oral argument after there was a re-pleading. And we did raise this argument in the opening brief and in the reply. And the second opinion in order. Counsel, do you agree with opposing counsel that if we conclude that this lease agreement is ambiguous, it's up to a fact finder to resolve the ambiguity? Well, that is the law, but I don't believe that this is ambiguous, Your Honor. And because you construe the text with the contract as a whole, including who drafted this. It's construed against the drafter. They drafted this. Does Oregon law say it's construed against the drafter? Yes, Your Honor. What case in Oregon says that a contract is construed against the drafter? Your Honor, I'd be happy to submit a supplemental brief. There is a statute that provides for that. I don't need a supplemental brief. I wanted you to tell me. You made the statement that it's construed against the drafter, so I'm assuming you're prepared to cite a case that says that. Well, you caught me, Your Honor. I apologize. Thank you for your time. Unless the court has any questions, my time has expired. Well, I have a question. I thought Judge Robinson's last question was if we, you started off with saying, if we conclude that this contract is ambiguous, does it have to go to a trier fact? And your answer didn't really accept her hypothetical if that it's ambiguous and urge that it's just not ambiguous. I would really like to hear an answer to the question that Judge Robinson asked you, which was, if we conclude it's ambiguous, does it have to be resolved, ambiguity resolved by a trier fact? Let me try to answer it this way. I think the threshold issue for the court is was there actually a formed contract? Was there an offer, acceptance, and mutual assent? That is a question of law for this court. Now, if you determine that a contract was formed, but this term is ambiguous, then yes, that becomes an issue for further proceedings, which may be resolved after taking depositions and may be resolved on summary judgment or by a jury or the court. Dave, thank you. Your Honors, a few brief things with rebuttal. A few misstatements of the record that I would like to correct. First, in terms of Stonebridge's preservation argument, they are incorrect. We point, our main argument below is that the signature blocks evidenced the formation of the contract between the parties. That is clear in paragraph nine of the complaint, as well as SER five and six. The second misstatement of the record is that Morrow never invoiced Stonebridge. That is incorrect. We did send them an invoice, and in fact, that paragraph 12 of the complaint, we referenced that we had done so. In addition, Stonebridge stated that there was no, that they had no knowledge that Morrow had, that Morrow had never, they had no knowledge that under the contract, and in fact, that ER 45 is the letter from Stonebridge attempting to cancel the lease agreement between the parties. So, I just don't understand the notion that they were unaware that we had countersigned the lease agreement after sending them a copy. The last thing that I wanted to mention, Your Honors, and it really goes to Judge it's important to remember that under Oregon's Uniform Commercial Code, industry practice can inform the meaning of terms in an agreement. And as we made clear, both in the complaint and in our briefing, it is standard industry practice for a potential customer to send a lease request to the lessor, and then it's then up to the lessor to accept or not accept that signed order request. In this case, Morrow did countersign the lease agreement, and therefore, an agreement formed between the parties. And at the motion to dismiss stage, I mean, certainly Stonebridge is free to argue below that that is not actually industry practice, even though it is, but at least at the motion to dismiss phase, this court is required to reverse the district court's dismissal of Morrow's complaint. Thank you, Your Honors. Thank you, counsel. Unless there are questions from Judge Sips or Judge Rollinson, and I have none, this case shall not be submitted, and the parties will hear from us in due course. I again want to thank Ms. French and Mr. Koch for appearing remotely to help us out with your advocacy. Thank you. Judge Gould, may I request a 10-minute recess? My court will take a 10-minute recess at this point.
judges: GOULD, RAWLINSON, Zipps